Chief Justice Bibb
delivered the Opinion of the Court.
In June, 1821, these ejectments were commenced by Woods and others, as lessors of the plaintiff, who claim the land in controversy, by two *175 patents from the Commonwealth of Kentucky, bearing date in Dec. 1809, founded on surveys made in June 1809 — the one for 109 1-3 acres, the other for -140 1-3.
efendant’s title.
Verdict, judgment, and grounds for new trial.
Decision of the circuit court.
Grounds of plaintiff’s claim,
Kennedy’s patent, containing a mistake in the courses whereby it ■ would seem to cover other and defendant’s . ground.
The defendant, Kennedy, claims by virtue of a grant from the Commonwealth of Virginia, bearing date in June 1783, to John Kennedy, for 1,400, being his settlement and preemption, the survey thereof, made in October, 1780,' and by virtue of a possession, residence and cultivation, commenced in 1786, and continued by himself ever since.
After verdict and judgment for the defendant, the plaintiff moved for a new trial, and assigned three causes: first, that the verdict is against the evidence; secondly, that it is against law; thirdly, that the court misdirected the jury,
The court overruled the motion, and thereupon the plaintiff took a hill of exceptions, stating the whole evidence, with the various instructions thereupon, asked of the court to the jury, by each party, and gs given or refused.
The attempt of the plaintiff was to take .advantage of mistakes of courses in Kennedy’s certificate of survey; and thereby to confine him to courses and distances from the beginning corner, which is existing and undisputed, regardless of the natural and artificial objects found upon the ground, and alluded to in the description contained in Kennedy’s survey and patent; to make a constructive figure from the courses and distances in defiance of actual visible objects of description and abuttal.
In the plat of Kennedy, Elk garden creek is repre? sented as included in the survey, the head waters thereof being within it, and one line of the survey is described in the certificate of survey, as ending on the dividing ridge between that and Paint lick creek, and another line as running nearly along the dividing ridge; and Kennedy’s improvement (on which his claim was founded) is also alluded to as included in the survey and grant, By the constructive figure attempted to be given, and the location *176 contended for by the plaintiff, Kennedy’s patent is made to run off in the opposite direction,' from the ridge between Paint lick and Elk garden creeks; to ryn off from, and exclude the improvement; and wholly disregards the boundaries of Kennedy’s patent, as reputed to be, as early as 1783, and ever since, and as confirmed by the adjoining surveys, well established, made in 1783 and 1784, calling for Kennedy’s lines and corners.
Mistake in the pint and certificate of survey, and consequently in the grant, in calling West North, and North East, and East South, and South West, effectually explained and obviated by the marked lines and corners and other objects described and found on the ground.
The mistake committed by the surveyor in describing the land surveyed and represented on the plat, is easily seen; and explained by the natural objects themselves, when ascertained by going on the ground, or comparing the plat and certificate of Kennedy’s sprvey, with the report of the surveyor in this cause. The surveyor, in making out Kennedy’s plat and certificate, (the survey, being at right angles with lines to the North, East, South and West, including the 1,40.0 acres in in four lines,) put his meridian on one of the East and West lines, instead of a North and South line. As soon as the true course of Elk garden creek is kown, this mistake is visible on the plat; the needle represented on the plat, and the Elk garden creek represented also,' detect the mistake; all the other objects of description used in the certificate of survey, and found upon the ground, confirm the mistake, and explain that the surveyor transfused this mistake, in putting his needle on a wrong line (the north end pointing to the west) into his description of the lines and corners by the courses, from his beginning. He marked his beginning on the plat as íetter A; and describes this corner in his certificate, as standing on the south side of Elk garden creek. It is on the south side in reference to his needle on the plat, but in truth and in fact, it stands on the east siete of the Creek. The representation on the plat of Elk garden creek, its course and head waters, and the corner, are all true upon the ground, and true on the plat, as soon as the mistake in the needle ‘ is corrected on the plat. Elk garden heads in fact, in the southern boundary, but by this mistake in placing the needle, it' would appear on the plat and certificate of survey, to head in the western boundary; the dividing *177 ridge called for, which in truth is southwardly of the beginning, appears in consequence of this misíake to be westwardly. Thus it is, that the mistake in making an east and west line a meridian, instead of a north and south line if followed frqm the beginning given, would make the survey extend frqm the beginning northwardly, instead of southwardly, and run off in the opposite direction from the improvement, the head of Elk garden and Paint lick creeks, instead of including them.
Gases of mis; takes in grants rectified, and visable boundaries follpiyed.
Where the party tenders an exception to a decision on a question of testimony, on the"trial, or reserves the point, the other party may waive the testimony and so avoi<|' the excep-/ tion.
The decisions in the case of Helm vs. Small, (Hardin 369,) and Alexander vs. Lively, at this term, case 34, ante, page 159, sufficiently explain the doctrine of correcting mistakes in grants, without reference to other c$ses decided on the same subject. After the many decisions to be found in the books about rectifying mistakes; following visible bo unci tu ries, instead of courses and distances; reputation of boundary, and presumptions from length of possession, it is not necessary tP rup iqto farther details to explain the'propriety of refusing a new trial to the plaintiff in this case, whose claim is so groundless, and so vexatiously asserted, in defiance of settled principles, and against an actual possession, under, and by the marked boundaries of Kennedy’s grant, for upwards of tliirty-five years before suit. The verdict was according to the evidence, according to the law of the case, and according to justice; and the court did not misdirect the jury, to the pre? judice of the plaintiff.
An objection to evidence offered by the defendant, arose in the course of the trial. Tlje court admitted it. The evidence if excluded, could not in the slightest degree effect the verdict; nor produce a doubt as to the propriety of denying a new trial, and does not properly belong tp the .causes assigned in the motion for a new trial; it was not an instruction given to the jury. The objection was to the admission of testimony; the court decided against the objection; the plaintiff then acquiesced; he did not, during the trial, intimate a wish to reserve the question, or tender any exception to the decision. But after the yerdict and judgment, and motion for a-new tria}, *178 ' decided against him, having during all the time, never stirred any objection to the decision of the court on that question, the plaintiff in giving the evidence and history of the cause, states the objection as made and decided, and says to which opinion “the plaintiff now excepts.” Had an exception to the opinion of the court been tendered at the time, of an intention to reserve the question been expressed then, the defendant might have avoided the question, by waiving testimony so useless in his defence, and have given the go by to an objection which was merely captious, and not at all pointing to the merits of the controversy.
Where an exception to an erroneous decision on evidence is not taken' on _ the trial, nor reserved, but first presented in a motion for a new trial, not moved on that ground,the point will be considered by the court, in the relation it bears to the whole case, and if justice be done, the error may not avail.
The objection now comes before us, upon an exception tallen to the opinion of the court in denying the new trial; and then for the first time the intention is expressed to rely and insist on his objection, by way of exception to the decision upon it. It is too late to have any avail; and comes within the principle recognized in Craddock vs. Craddock, (3 Litt. 78.)
We do not say that an objection taken, and improperly ruled, as to testimony having an important bearing, and calculated to have an effect in changing the verdict according to the admission or rejection, might not be a good cause for a new trial, notwithstanding the point was not reserved during the. trial. But this now assigned for error comes before us, in connexion Avilh a motion for a new trial only; it was not assigned for cause, upon the motion for a new trial, but comes in after that motion Avas decided, and in an exception to the opinion in overruling the motion for a new trial. We can noiv consider it only in the relation it bears to the whole evidence; we cannot consider jt as an isolated question, as a substantive and distinct exception. Its weight upon .the merits and demerits .of the controversy, is all that we can consider, according to the mode in which it is presented. .Coming in .this shape before Us, we cannot, in the exercise of a sound discretion, in revising the opinion of the court in refusing a new trial, set aside a verdict and judgment so entirely conformable to the evidence,- *179 and justice of the case, to give place and influence to an objection so captious and so foreign from the merits of the controversy.
WickUffe, Bredi, and J. Speed Smith, for plaintiffs; Turner and Caperton, for defendants.
Judgments affirmed, with costs in each case.